UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

O.F.B.,

                Petitioner,

-against-

RAUL MALDONADO, JR., in his official capacity as Warden of the Metropolitan Detention Center; LADEON FRANCIS, in his official capacity as Acting Field Office Director of New York, Immigration and Customs Enforcement; TODD LYONS, in his official capacity as Acting Director U.S. Immigrations and Customs Enforcement; KRISTI NOEM in her official capacity as Secretary of Homeland Security; PAM BONDI, in her official capacity as Attorney General,

                Respondents.

**MEMORANDUM & ORDER**
25-CV-6336 (HG)

**HECTOR GONZALEZ**, United States District Judge:

On August 21, 2025, U.S. Immigration and Customs Enforcement ("ICE") detained Petitioner O.F.B. ("O.F.B." or "Petitioner") as he was leaving a hearing before an immigration judge in Manhattan. The next day, Petitioner was transferred to the Metropolitan Detention Center ("MDC") in Brooklyn, where he remains detained. Petitioner now seeks a writ of habeas corpus, pursuant to 28 U.S.C. § 2241. ECF No. 1.[1] For the following reasons, his petition for a writ of habeas corpus is GRANTED.

---

[1] Unless otherwise indicated, when quoting cases and the parties' papers, the Court omits all internal quotation marks, alteration marks, emphases, footnotes, and citations. The Court refers to the pages assigned by the Electronic Case Files system ("ECF").

## BACKGROUND[2]

Petitioner is a Colombian national diagnosed with human immunodeficiency virus ("HIV"). ECF No. 1 ¶ 21. According to Petitioner, he was subjected to physical abuse and death threats in Colombia because of his diagnosis. *Id.* At some point, Petitioner decided to seek safety from that alleged hostility in the United States. *Id.* ¶¶ 21–22.

### A. Arrival in Texas and Release on Parole

On January 30, 2023, Petitioner arrived at a port of entry in El Paso, Texas, after he scheduled an appointment with U.S. Customs and Border Protection ("CBP") through an online tool, the "CBP One" application, which allowed individuals seeking admission to the United States to schedule appointments for inspection. ECF No. 11-1 at 15. According to the government, Petitioner lacked a valid entry document, which rendered him inadmissible under 8 U.S.C. § 1182(a)(7) and subject to removal under 8 C.F.R. § 1.2. *Id.* at 16. On that same day, CPB issued and served Petitioner with a Notice to Appear ("NTA"), placed him into removal proceedings pursuant to 8 U.S.C. § 1229a, and released him on humanitarian parole pursuant to

---

[2] The Court relies on evidence submitted by the parties in outlining the relevant facts to this Order, including declarations submitted by both Petitioner and the government, and the parties' supplemental submissions in response to the Court's Orders. The facts recited here are undisputed unless otherwise noted. *See Hyppolite v. Noem*, No. 25-cv-4304, 2025 WL 2829511, at *2 n.1 (E.D.N.Y. Oct. 6, 2025); *Munoz Materano v. Arteta*, No. 25-cv-6137, 2025 WL 2630826, at *1 n.1 (S.D.N.Y. Sept. 12, 2025).

After review of all the submissions, the Court finds that the Petition "present[s] only issues of law," and it may, therefore, be adjudicated without a hearing. *See* 28 U.S.C. § 2243 (directing courts to "determine the facts, and dispose" of habeas petitions expeditiously, "as law and justice require"); *see also Tumba Huamani v. Francis*, No. 25-cv-8110, 2025 WL 3079014, at *1 n.1 (S.D.N.Y. Nov. 4, 2025).

8 U.S.C. § 1182(d)(5).[3]  The NTA included a hearing date before an immigration judge in Chicago, Illinois, for July 5, 2024.  ECF No. 11-2 ¶ 7; ECF No. 12-2 at 1.

In the months that followed his arrival at the entry port in Texas and his parole, Petitioner settled in New York City, reunited with his family, sought medical treatment for his HIV, and applied for and received a work permit that allowed him to lawfully work in the United States.  ECF No. 1 ¶¶ 24–27, 29.

### B.  Arrest in New York City

A year after Petitioner was released on parole, he filed an asylum claim with the immigration court in Chicago, and subsequently moved to change the venue of his immigration proceedings to New York City.  *See* ECF No. 1 ¶ 30; ECF No. 11-2 ¶ 8.  Around that time, Petitioner's immigration court hearing, originally scheduled for July 5, 2024, was adjourned to August 21, 2025, and Petitioner was instructed to appear before an immigration court at 26 Federal Plaza in Manhattan, which he did.  *See* ECF No. 1 ¶ 31; ECF No. 11-2 ¶ 8.

At the conclusion of the hearing, as Petitioner was preparing to leave the hearing room at 26 Federal Plaza, he noticed ICE agents gathered around the door just outside the room—he was arrested as he exited the hearing room, ECF No. 1 ¶¶ 34–35, and served with "a Warrant for Arrest of Alien (Form I-200), a copy of the Online detainee Locator System Privacy Notice, and a list of pro bono legal service providers," ECF No. 11-2 ¶ 10.  He was initially taken to a holding area at 26 Federal Plaza before he was transferred to the MDC on August 22, 2025.  ECF No. 1 ¶ 38.

---

[3]     After some initial confusion, it is clear from the parties' papers that Petitioner was paroled for one year and, at some point before his parole expired, he was aware of the termination date.  *See* ECF No. 15-1 at 5, 6; ECF No. 16; ECF No. 17.

3

Although the parties disagree on the adequacy of the medical care Petitioner has been receiving at the MDC, *compare id.* ¶¶ 43–45, *with* ECF No. 11-1 at 30–31; ECF No. 11-3, they agree that Petitioner's concerns about such care are, in part, animating the instant Petition, *see, e.g.*, ECF No. 1 ¶ 1; ECF No. 11-1 at 28.

### C. Procedural History

On November 14, 2025, Petitioner initiated the instant action by filing an emergency petition for a writ of habeas corpus, ECF No. 1 ("Petition"), and an emergency application for an order to show cause in support of the Petition, ECF No. 6. The next day, the Court issued an Order to Show Cause directing the government to show cause why a writ of habeas corpus should not be issued, and on November 19, 2025, the government filed its opposition to the Petition and response to the Court's Order to Show Cause, ECF No. 11 ("Opposition"). Petitioner filed his reply on November 20, 2025. ECF No. 12.

On November 21, 2025, the Court ordered the government to clarify portions of a declaration filed in support of its Opposition which asserted that the NTA "expressly reflect[ed]" Petitioner was aware of his parole-expiration date. *See* November 21, 2025, First Text Order. The government's response, ECF No. 15, answered some questions but raised others and the Court requested that Petitioner submit a letter on November 24, 2025, to address the "lack of clarity" in the government's supplemental response, November 21, 2025, Second Text Order.

Petitioner's November 24, 2025, letter, ECF No. 16, clarified that, while he was not issued a Form I-94 or any other document listing the parole-expiration date at the border, and there were various issues that delayed his ability to confirm the expiration date until November 22, 2025, he does not dispute that his parole ended one year after he was served with the NTA, *see id.* at 1.

4

The same day, in response to Petitioner's letter, the government submitted another supplemental declaration which included a copy of Petitioner's "Application for Asylum, Withholding of Removal, and Protection under the Convention against Torture" (Form I-589), in which Petitioner indicates his parole expired on January 29, 2024. ECF No. 17; ECF No. 17-1 at 5.

## LEGAL STANDARD

A petition for a writ of habeas corpus under Section 2241, "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or law or treaties of the United States.'" *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)). "Federal courts have jurisdiction to hear habeas corpus claims by non-citizens challenging the constitutionality of their detention." *Lopez v. Sessions*, 2018 WL 2932726, at *6 (S.D.N.Y. June 12, 2018) (citing *Denmore v. Kim*, 538 U.S. 510, 516–17 (2003)).

## DISCUSSION

O.F.B. seeks a writ of habeas corpus based on: (1) a violation of his procedural due process rights under the Fifth Amendment; (2) a violation of his substantive due process rights under the Fifth Amendment; (3) a violation of the Fourth Amendment; (4) a violation of the Administrative Procedure Act ("APA"); and (5) violations of the Immigration and Nationality Act ("INA") and APA.[4] ECF No. 1 at 21–26.

---

[4] Although Petitioner presents serious claims regarding his medical care at the MDC (claim two), unlawful arrest, violations of the APA, and the common law privilege against certain civil arrests (claims three, four, and five), *see* ECF No. 1 at 23–26, the Court need not address these claims, given its conclusion that Petitioner's detention under either 8 U.S.C. §§ 1225 or 1226 violates the Due Process Clause of the Fifth Amendment and 8 C.F.R. § 212.5.

5

I. **Basis for Detention**

Two statutory sections govern immigration detention: 8 U.S.C. § 1225, which provides that "an alien seeking admission [who] is not clearly and beyond a doubt entitled to be admitted . . . shall be detained"; and 8 U.S.C. § 1226, which "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings," including noncitizens "who were inadmissible at the time of entry." *Jennings v. Rodriguez*, 583 U.S. 281, 288–89 (2018). Under Section 1225, detention of a noncitizen is mandatory and release is permitted only "for urgent humanitarian reasons or significant public benefit." 8 U.S.C. § 1182(d)(5)(A). Section 1226, however, provides that detention is discretionary and, if detained, a noncitizen may then request a bond hearing before an immigration judge, 8 C.F.R. §§ 1236.1(c)(8), (d)(1), where the noncitizen "may secure his release if he can convince the officer or immigration judge that he poses no flight risk and no danger to the community." *Nielsen v. Preap*, 586 U.S. 392, 397–98 (2019).

The government argues that "Petitioner falls squarely within the ambit of [Section 1225]'s mandatory detention requirement," which does not require a hearing. ECF No. 11-1 at 21. Its argument relies on two, co-dependent bases: (1) a textual interpretation of the relevant detention statutes that, in turn, relies on (2) a factual basis, *viz.*, that because Petitioner has not yet been admitted, he is an applicant for admission; that his parole "automatically terminate[d]" after one year; and that the termination "restore[s] [him] to the status that he had at the time of parole," such that he is "seeking admission" under Section 1225(b)(2). ECF No. 11-1 at 23–25, 25 n.9.

Petitioner responds that Section 1225 does not apply because he has been in the country pending his removal proceedings and therefore, not "seeking admission." ECF No. 1 ¶ 56; ECF No. 12 at 8–9. Petitioner further argues that Section 1226 "generally governs the process of

6

arresting and detaining [noncitizens who already entered the country] pending their removal." *Jennings*, 583 U.S. at 288; *see also* ECF No. 1.

The Court agrees with Petitioner. The government's interpretation of the INA is inconsistent with a straightforward reading of the statute, which leads to the inevitable conclusion that Petitioner is being detained under 8 U.S.C. § 1226. However, as explained further *infra*, even if the Court were to accept the government's reading of the statute, it would not result in a different outcome.

Though neither party contests that Petitioner is an "applicant for admission," their disagreement centers around whether Petitioner is "seeking admission" to the country. The government argues that Section 1225 applies because upon the termination of his parole, Petitioner was "restored to the status that he had at the time of parole," and thus he is considered to be "seeking admission" such that Section 1225(b)(2) applies and his detention is mandatory. ECF No. 11-1 at 21–24. Petitioner argues that he is not "seeking admission" because "a noncitizen apprehended while residing in the United States does not satisfy the condition that he be seeking admission." ECF No. 12 at 10.

The Court is not persuaded by the government's interpretation of the INA and thus adds yet one more decision to the nearly 300 other district court decisions that have addressed this interpretive dispute and found that Section 1226 governs these types of cases.[5] Here, the Court

---

[5]     *See Demirel v. Fed. Detention Ctr.*, No. 25-cv-5488, 2025 WL 3218243, at *1 (E.D. Pa. Nov. 18, 2025) (noting that "[i]n all but six" of the "288 district court decisions addressing . . . the Government's interpretation of the INA—the same interpretation it urges here—was rejected."); *see also Demirel*, No. 25-cv-5488, ECF No. 11-1 (appendix collecting all 288 decisions). Notably, while the government was quick to urge the Court to follow the handful of out-of-circuit district court decisions that found Section 1225 controlling, its brief failed to even hint at the lopsided number of decisions going the other way.

finds that the government's reading suffers from two problems: (1) it is inconsistent with canons of statutory interpretation; and (2) it is inconsistent with binding precedent.

With respect to the mechanics of statutory interpretation, the government's position only makes sense if you read Section 1225 in a vacuum, and the Court is persuaded by the analysis in *Sarmiento Guerrero v. Noem*, No. 25-cv-5881, 2025 WL 3214787, at *3–5 (E.D.N.Y. Nov. 18, 2025) (finding that the "context" and "overall statutory scheme" support application of Section 1226 to petitioner's detention); and *Tumba Huamani*, 2025 WL 3079014, at *3–5 (finding that the government's interpretation of "Section 1225 would also all but read Section 1226 off the books").

Even if reasonable minds could disagree on the proper interpretation of Section 1225 and Section 1226, this Court is bound to follow the Supreme Court's decision in *Jennings*, which answers this question. In *Jennings*, the Court explained that Section 1225 applies to "certain aliens seeking admission into the country," while Section 1226, in contrast, is a "default rule" that "authorizes the Government to detain certain aliens *already in the country pending the outcome of removal proceedings* under §§ 1226(a) and (c)." 583 U.S. at 289, 303 (2018) (emphasis added); *see also Nielsen*, 586 U.S. at 396–97 (holding that Section 1226(a) applies to noncitizens "present in this country"). Further, when ruling on a related question, the Supreme Court stated that:

> In the ordinary course, if the Department of Homeland Security (DHS) discovers that *an alien is living in the United States* without authorization, it may initiate removal proceedings against the alien by sending him a notice to appear. . . . The INA further provides that DHS may arrest and detain the *alien pending a decision on whether the alien is to be removed from the United States*. § 1226(a).

*Johnson v. Guzman Chavez*, 594 U.S. 523, 527 (2021) (emphases added).

The government attempts to distinguish Petitioner's case from clear precedent by arguing that because his parole expired, he is no longer considered to be present in the country, but rather

8

"restored to the status that he had at the time of parole." ECF No. 11-1 at 24. This argument, a tactic that other courts have referred to as the "entry fiction," *see, e.g.*, *Sarmiento Guerrero*, 2025 WL 3214787, at *6; *J.G.O. v. Francis*, No. 25-cv-7233, 2025 WL 3040142, at *4 (S.D.N.Y. Oct. 28, 2025), is not relevant to the statutory analysis because "the entry fiction is a doctrine that dictates what constitutional rights are due to a noncitizen who is physically present in the United States (for example, because of detention or parole) but hasn't been lawfully admitted," *J.G.O.*, 2025 WL 3040142, at *4. Indeed, "parole status speaks only to whether [Petitioner] has been admitted, not whether he was seeking admission at the time of his detention in [August], as that term is used in Section 1225(b)(2)(A)," and, therefore, the government's "reference to the entry fiction . . . conflates Section 1225(b)(2)(A)'s distinct requirements that an alien be an applicant for admission, and that he be seeking admission." *Sarmiento Guerrero*, 2025 WL 3214787, at *6.

Accordingly, because the Court finds the government's arguments to be unpersuasive, it concludes that Section 1225 does not apply to a noncitizen like Petitioner, who has been living in the United States for years, and that his detention can only be authorized if it came about as a result of procedures compliant with 8 U.S.C. § 1226(a). The Court next addresses whether Petitioner's due process rights have been violated under that section.

## II. Due Process

It is well settled that the Due Process Clause of the Fifth Amendment extends to noncitizens, including those in the midst of removal proceedings. *See Zadvydas v. Davis*, 533 U.S. 678, 693 (2001) ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); *Reno v. Flores*, 507 U.S. 292, 306 (1993). Indeed, "[t]he Supreme Court has been unambiguous that executive detention orders, which occur without the procedural protections

9

required in courts of law, call for the most searching review." *Velasco Lopez v. Decker*, 978 F.3d 842, 850 (2d Cir. 2020).  When determining whether process afforded in the civil immigration context was adequate, courts in this Circuit apply the balancing test set forth in *Mathews v. Eldridge*, 424 U.S. 319 (1976).  *Velasco Lopez*, 978 F.3d at 851.  Under that test, the Court balances:  "(1) the private interest that will be affected by the official action; (2) the value, if any, of additional or substitute procedural safeguards; and (3) the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews*, 424 U.S. at 334.

With respect to the first *Mathews* factor—the private interest at stake—the interest in "freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process Clause] protects." *Zadvydas*, 533 U.S. at 690; *see also Velasco Lopez*, 978 F.3d at 851 ("Case after case instructs us that in this country liberty is the norm and detention 'is the carefully limited exception.'").  Particularly relevant here, "the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts a 'grievous loss' on the parolee," therefore it "must be seen as within the protection of the [Due Process Clause]." *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972).  Indeed, "even when that revocation [of parole] is discretionary, [courts] have held that a noncitizen has a significant liberty interest in remaining out of custody once parole is granted." *Savane v. Francis*, No. 25-cv-6666, 2025 WL 2774452, at *9 (S.D.N.Y. Sept. 28, 2025) (collecting cases).

Moving on to the value of the additional safeguards—here, an individualized hearing before a neutral decisionmaker where the government has the burden of showing that Petitioner's detention is authorized under 8 U.S.C. § 1226(a)—weighs in Petitioner's favor, as there is a

significant risk of erroneous deprivation of Petitioner's liberty interest without such safeguards. *See Valdez v. Joyce*, No. 25-cv-4627, 2025 WL 1707737, at *3–4 (S.D.N.Y. June 18, 2025) (noting a "high" risk "of erroneous deprivation in the context of re-detention absent a change in circumstances, procedure, or evidentiary findings").

Turning to the third factor, the government's interest "to detain individuals under 8 U.S.C. § 1226(a) is valid where it advances a legitimate governmental purpose," such as "ensuring the appearance of aliens at future immigration proceedings and preventing danger to the community." *Valdez*, 2025 WL 1707737, at *4 (quoting *Velasco Lopez*, 978 F.3d at 854; *Zadvydas*, 533 U.S. at 690). The government does not argue that Petitioner is a danger to the community and points to nothing that supports the notion that Petitioner presents a flight risk. It would be hard to, since the record supports the exact opposite—at all times, Petitioner has notified the immigration authorities of his location, appeared for the proceeding that resulted in his arrest, and followed the rules that applied to him. Absent a showing that detention is necessary to ensure Petitioner's appearance or to prevent danger to the community, the government has failed to show a significant interest in Petitioner's continued detention.

Here, the record demonstrates that the government did not play by the rules—"treating attendance in immigration court as a game of detention roulette is not consistent with the constitutional guarantee of due process." *Lopez Benitez v. Francis*, No. 25-cv-5937, 2025 WL 2371588, at *15 (S.D.N.Y. Aug. 13, 2025). Petitioner is entitled to more process than he received. And, in light of the absence of any reason for Petitioner's arrest under Section 1226, either in the record or in the briefing, the Court cannot conclude that his detention is compliant with the mandates of the Due Process Clause.

11

### III. Irrespective of the Applicable Detention Provision, Petitioner's Due Process Rights Were Violated

As mentioned above, even if the Court ignored the problems with the government's statutory interpretation, or the hundreds of district court decisions that have confronted this issue, and instead followed the minority view (which is exactly what the government asks here), the result would be the same—Petitioner's arrest and detention do not comport with due process.

Assuming without deciding that Section 1225 applies, the record supports that Petitioner was initially paroled pursuant to 8 U.S.C. § 1182(d)(5). ECF No. 1 ¶ 53; ECF No. 11-1 at 9, 14, 25 n.9. Further accepting that Petitioner's parole expired one year after he was served with the NTA, *see* ECF No. 15-1 at 5, 6, Section 1182(d)(5)'s implementing regulations nevertheless require significantly more process than what Petitioner was afforded here. The controlling regulation provides, in relevant part, that "[p]arole shall be automatically terminated without written notice . . . at the expiration of the time for which parole was authorized, and . . . *the alien shall be processed in accordance with paragraph (e)(2) of this section except that no written notice shall be required*." 8 C.F.R. § 212.5(e)(1) (emphasis added).

Under Section 215.5(e)(2):

> Any further inspection or hearing shall be conducted under section 235 or 240 of the [INA] and this chapter, or any order of exclusion, deportation, or removal previously entered shall be executed. If the exclusion, deportation, or removal order cannot be executed within a reasonable time, *the alien shall again be released on parole unless in the opinion of the official listed in paragraph (a) of this section the public interest requires that the alien be continued in custody*.

*Id.* § 212.5(e)(2)(i) (emphasis added). As an initial matter, there is no question that Section 240 applies, as Petitioner's removal proceedings are pending. *See, e.g.*, ECF No. 1 ¶ 56; ECF No. 15-1 at 5. Likewise, there is no question that there has yet to be a final determination of removal in the months following Petitioner's detention. Therefore, because there is no indication of when Petitioner's removal proceedings will end, it necessarily follows that if the pending

removal proceedings result in an order of removal, that order "cannot be executed within a reasonable time." 8 C.F.R. § 212.5(e)(2)(i).[6] Under these circumstances, the applicable regulatory provision requires that Petitioner "shall again be released on parole" unless ICE has made an individualized determination that "the public interest requires that the alien be continued in custody." *Id.* Here, because no such determination has been made, Petitioner is being detained in violation of the agency's own regulations.

In short, regardless of whether Section 1225 or 1226 applies to the facts here, the application of the previously discussed *Mathews* test leads to the same inevitable conclusion: Petitioner has been, and continues to be detained in violation of the Fifth Amendment. First, Petitioner has a significant and long-recognized interest in freedom "from government custody, detention, or other forms of physical restraint." *Zadvydas*, 533 U.S. at 690. Next, the additional procedural safeguards identified in 8 C.F.R. § 212.5 are not only valuable for preventing the erroneous deprivation of an important interest, they are required by the Section 1225 statutory scheme that the government insists applies. Accordingly, the government's interest in "efficient administration of the immigration laws at the border," *Landon v. Plasencia*, 459 U.S. 21, 34 (1982), is not impermissibly burdened by affording the process laid out in 8 C.F.R. § 212.5

---

[6] The government implicitly concedes as much. It has effectively advised the Court that given the procedural posture of Petitioner's case before the immigration court, he is necessarily facing a lengthy period of detention while the removal administrative process inches forward. *See* ECF No. 11-1 at 10 n.1 (noting that it views the Court's November 17, 2025, Text Order prohibiting the government from moving Petitioner out of the country as "unnecessary" because "Petitioner is not subject to an order or [*sic*] removal at this time, and has available to him appeals to the BIA and to the Second Circuit if and when such order should issue."). Notably, as of November 18, 2025, the backlog of BIA appeals numbered in excess of 200,000. *See All Appeals Filed, Completed, and Pending*, Exec. Off. Immigr. Rev. Adjudication Stat. (Nov. 18, 2025), https://perma.cc/P25M-RDMW. The backlog of asylum applications numbered in excess of 2.4 million. *See Total Asylum Applications*, Exec. Off. Immigr. Rev. Adjudication Stat. (Nov. 18, 2025), https://perma.cc/Y96A-XZ9E.

13

because it is "required to follow [its] own regulations." *Fed. Defs. of New York, Inc. v. Fed. Bureau of Prisons*, 954 F.3d 118, 130 (2d Cir. 2020); *cf. Savane*, 2025 WL 2774452, at *6–10 (after assuming, but not deciding, the applicability of Section 1225 following the detention of a noncitizen who had previously been released on his own recognizance, applying similar analysis of the Fifth Amendment effect of agency's failure to follow 8 C.F.R. § 212.5).

## IV.  Scope of Relief

Under either section of the INA, the government's detention of Petitioner in August was invalid due to the lack of due process. The "typical remedy" for "unlawful executive detention" is "of course, release." *Munaf v. Green*, 553 U.S. 674, 693 (2008); *see also Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973) ("The traditional function of the writ [of habeas corpus] is to secure release from illegal custody"; it is the "usual remedy by which a man is restored again to his liberty, if he ha[s] been against law deprived of it.").

Here, the nature of the constitutional violation Petitioner sustained—*i.e.*, the government's failure to conduct any kind of individualized assessment before detaining him, failure to make any showing of changed circumstances, and failure to provide him with an opportunity to respond—renders any post-deprivation review by an immigration judge inadequate. Especially in light of the fact that "[d]etention under § 1226(a) is frequently prolonged because it continues until all proceedings and appeals are concluded." *Velasco Lopez*, 978 F.3d at 852.

The government's ongoing detention of Petitioner, in the face of this complete failure of process, entitles him to immediate release.

14

## **CONCLUSION**

For these reasons, Petitioner's detention without an individualized custody determination violates the INA and the Due Process Clause of the Fifth Amendment, and his Petition for a writ of habeas corpus under 28 U.S.C. § 2241, ECF No. 1, is GRANTED.

Respondents are directed to immediately release Petitioner from custody within 24 hours of this Order and are further directed to certify compliance with the Court's Order by filing a letter on the docket no later than 5:00 p.m. on November 26, 2025.  The Court further orders that Petitioner shall not be re-detained without notice and an opportunity to be heard at a pre-deprivation bond hearing before a neutral decisionmaker, where Respondents will have the burden of showing that his detention is authorized under 8 U.S.C. § 1226(a).  The Clerk of Court is respectfully directed to enter judgment consistent with the Order and close the case.

SO ORDERED.

*/s/ Hector Gonzalez*
   HECTOR GONZALEZ
   United States District Judge

Dated: Brooklyn, New York
       November 25, 2025